UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARY KENNY,

                              Plaintiff,
                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**

                                                                    CV 14-7505 (SJF) (AKT)

                    - against -

NASSAU UNIVERSITY MEDICAL CENTER,
THE LONG ISLAND HOME, INCORPORATED
VILLAGE OF HEMPSTEAD, WALTER OHR,
JOHN DOE 1 AND JOHN DOE 2,

                              Defendants.
--------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

       Plaintiff Mary Kenny ("Plaintiff" or "Kenny") brings this action pursuant to 42 U.S.C.

§ 1983 against Defendants Nassau University Medical Center ("NUMC"), The Long Island

Home d/b/a South Oaks Hospital ("Defendant" or "South Oaks"), the Incorporated Village of

Hempstead ("the Village"), Officer Walter Ohr, John Doe 1, and John Doe 2 (collectively

"Defendants").  Among other claims, Plaintiff alleges four causes of action pursuant to 42 U.S.C.

§ 1983, including excessive force, wrongful arrest, promulgating a false report, failure to

intercede on behalf of a citizen and involuntary confinement.  *See generally*, Amended

Complaint ("Amend. Compl.") [DE 8].  In addition to the § 1983 allegations, Plaintiff also seeks

relief on state law grounds for negligent infliction of emotional distress and negligence

/malpractice.  *See id*.  Presently before the Court is South Oaks' motion to dismiss the Amended

Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted.  Of the six causes of action alleged in Plaintiff's Amended

Complaint, South Oaks is named in only the Fourth (negligent infliction of emotional distress),

Fifth (involuntary confinement pursuant to 42 U.S.C. § 1983) and Sixth (negligence/malpractice)

claims.

Judge Feuerstein referred South Oaks' motion to dismiss to this Court for a Report and

Recommendation as to whether the motion should be granted.  For the reasons set forth below,

the Court respectfully recommends to Judge Feuerstein that the motion to dismiss filed by South

Oaks be GRANTED, in part, and DENIED, in part.

## II.   BACKGROUND

### A.   The Amended Complaint[1]

Plaintiff resides in an apartment located at 14 Mulford Place, Hempstead, New York.

*See* Amend. Compl. ¶¶ 9, 17.  In 2012, Plaintiff started experiencing tension with her neighbors.

*Id*. ¶ 17.  This tension was the direct result of problems existing between Plaintiff and some of

her neighbors, including noise and flooding in Plaintiff's bathroom caused by her upstairs

neighbor.  *Id.*  As a result of these issues, Plaintiff submitted several complaints to the building

manager, further straining relations with her neighbors.  *Id.* ¶ 17–18.  This escalated tension

resulted in retaliatory conduct toward the Plaintiff, including one instance where a neighbor

screamed and cursed at Plaintiff.  *Id.* ¶ 18.

On February 18, 2013, Plaintiff burned some papers over a metal pot in her bathtub.

*Id.* ¶ 19.  A few minutes later, Plaintiff heard sirens outside of her apartment building.  *Id.* ¶ 20.

---

[1]     The following information has been taken directly from Plaintiff's Amended Complaint
and for purposes of this motion generally pertains only to South Oaks.  All facts alleged by the
Plaintiff are assumed to be true for purposes of deciding a motion to dismiss and are construed in
a light most favorable to the Plaintiff as the non-moving party.  *See, e.g.*, *LaFaro v. N.Y.
Cardiothoracic Grp.,* 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp.
2d 418, 425 (E.D.N.Y. 2012).

Plaintiff surmised that some of her disgruntled neighbors smelled the smoke and contacted the fire department. *Id.* Once on the scene, members of the Nassau County Fire Marshall Office and Defendant Police Officer Walter Ohr ("Officer Ohr") spoke with Plaintiff and her neighbors concerning the incident. *Id.* ¶ 21. Plaintiff explained that she had "carefully burned paper over a metal cooking pot in her bathtub, and that her neighbors called the fire department to harass and retaliate against her." *Id.* ¶ 22. To support this claim, Plaintiff played a recorded message of a neighbor yelling and cursing at her. *Id.* Officer Ohr, after listening to the recorded message, believed Plaintiff was "crazy" and "pulled Plaintiff from the chair she was sitting in and placed handcuffs on her." *Id.* ¶ 23. Officer Ohr then brought Plaintiff into the hallway outside the apartment and "threw her down on her stomach." *Id.* ¶ 24. Though Plaintiff remained compliant, Officer Ohr "grabbed her handcuffed arm and forcibly yanked it," injuring Plaintiff's shoulder. *Id.* ¶ 25.

 After interviewing Plaintiff and processing the scene, the Hempstead Police Department took Plaintiff into custody and transported her to NUMC for a psychiatric evaluation. *Id.* ¶ 26. The Nassau County Police Department's Arson/Bomb Squad and the Fire Department inspected Plaintiff's apartment but ultimately found no evidence of damage. *Id.* ¶ 28. Arson/Bomb Squad detectives interviewed Plaintiff at the hospital and concluded that she in fact did not attempt to burn down her apartment or building and that no crime had been committed. *Id.* ¶ 29–30.

Based upon the allegedly false report from the Hempstead Police Department, indicating that Plaintiff attempted to burn her apartment or building down, *id*. ¶ 32, NUMC involuntarily committed Plaintiff and held her overnight against her will. *Id.* ¶¶ 33, 34. During her stay, Plaintiff complained of pain in her shoulder for which she was evaluated, x-rayed and provided with pain medication. *Id.* ¶ 35–36.

On February 19, 2013, Plaintiff was involuntarily transferred from NUMC to South Oaks. *Id.* ¶ 37. Plaintiff claims that South Oaks did not advise her of her rights and failed to complete certain sections of the involuntary admission forms. *Id.* ¶ 38. South Oaks did not investigate Plaintiff's claims of innocence or otherwise attempt to obtain information from the Arson/Bomb Squad about the false allegations against her. *Id.* ¶ 39–40. Instead, Plaintiff claims that South Oaks used Plaintiff's statements as evidence that she failed to fully appreciate the scope of her allegedly dangerous behavior. *Id.* ¶ 41–42. Eventually, Plaintiff stopped trying to explain the situation to hospital staff. *Id.* ¶ 42. After 10 days at South Oaks, Plaintiff was discharged without explanation. *Id.* ¶ 46.

As a result of Defendants' actions, Plaintiff alleges that she "lost her employment in the Baldwin School District, damaged her relationship with the tutoring company for which she worked, and suffered extreme emotional and physical distress[.]" *Id.* ¶ 47.

### B.    Relevant Procedural History

Plaintiff filed her Amended Complaint on January 26, 2015. *See* DE 8. On February 19, 2015, South Oaks, through counsel, submitted a letter motion to this Court seeking an extension of time to submit its Rule 12(b)(6) motion to dismiss Plaintiff's Amended Complaint. *See* DE 17. On February 20, 2015, this Court granted South Oaks' motion and advised the parties that the motion was returnable before Judge Feuerstein once it was fully briefed. *See* February 20, 2015 Electronic Order. The fully briefed motion was filed on April 27, 2015. *See* DE 25. On May 19, 2015, after holding an initial conference with the parties, Judge Feuerstein referred all outstanding discovery and all pending motions to this Court for adjudication. *See* May 19, 2015 Electronic Order.

**C.** **Defendant's Motion to Dismiss**

    *1. Defendant's Moving Papers*

In its Memorandum of Law, South Oaks first asserts that Plaintiff's Fifth cause of action, alleging a violation of 42 U.S.C. § 1983, cannot proceed because South Oaks is neither a state actor nor does it engage in conduct under color of state law. *See* South Oaks' Memorandum of Law in Support of its Motion to Dismiss ("Def.'s Mem.") at 1.  Specifically, South Oaks states that it is a private not-for-profit corporation existing within the North Shore/LIJ Health System. Though it does receive funding through Medicaid and must remain in compliance with the regulations promulgated by the New York State Office for Mental Health, that fact "does not deem it to be a State actor." *Id*. at 6.  In addition, South Oaks argues that "the care for the developmentally disabled or those requiring psychiatric or addiction services have never been traditionally nor exclusively reserved to the State [and based upon this premise] . . . plaintiff cannot recover for any alleged violation [under] § 1983 as same applies directly to State actors, and South Oaks is therefore not liable under these laws." *Id*. at 7.  Similarly, South Oaks also argues that it did not act under color of state law since the State:  (1) did not exert coercive power over South Oaks;   (2) did not provide significant encouragement to South Oaks; (3) did not delegate a public function to South Oaks; and (4) was not entwined with South Oaks. *Id*. at 9. As such, South Oaks states that "[t]his defect is fatal to plaintiff's claim." *Id*.

    With respect to Plaintiff's state claw claims of negligent infliction of emotional distress and negligence/malpractice, South Oaks argues that both fail to state a viable claim. *Id*. at 10, 13. South Oaks argues that the claim for negligent infliction of emotional distress must fail because the hospital did not breach its duty of care to Plaintiff and such a claim is "[p]recluded where the offending conduct is embraced by a traditional tort remedy." *Id*. at 11 (quoting

*McIntyre v. Ford*, 256 A.D.2d 269, 270, 682 N.Y.S.2d 167 (App. Div. 1998)).  As to Plaintiff's claim for negligence/malpractice, South Oaks argues that "it is well settled that an involuntary psychiatric admission pursuant to the [New York] Mental Hygiene Law is privileged absent a showing of malpractice" and since Plaintiff has failed to plead an actionable claim of malpractice, this cause of action must be dismissed.  *Id*. at 13.

In the event Plaintiff's § 1983 claim is dismissed, South Oaks urges that the Court "should not exercise supplemental jurisdiction over the remaining state law claims."  *Id*. at 15.  According to South Oaks, case law supports the proposition that without a viable federal claim "courts should ordinarily decline to exercise supplemental jurisidiction[.]"  *Id*. at 15 (quoting *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  In addition, South Oaks maintains that courts generally "exercise supplemental jurisdiction after extensive discovery or when the matter is on the trial calendar."  Since the instant action is in its "infancy," Defendant posits that the exercise of supplemental jurisdiction would be inappropriate.  *Id*. at 17.

### 2.  *Plaintiff's Opposition*

Plaintiff responds that South Oaks, notwithstanding its status as a private not-for-profit corporation, was acting under color of state law because:  (1) courts have "regularly held that involuntary confinement by a private hospital is an action [taken] under the color of law[;]" (2) South Oaks relied on the NUMC physician's conclusion that Plaintiff was in need of involuntary confinement when it admitted her pursuant to New York Mental Hygiene Law ("MHL") § 9.37; and (3) South Oaks was acting together with and relying upon NUMC "in determining whether [Plaintiff] should be involuntarily committed [and thus South Oaks was] act[ing] under the color of law."  Specifically, Plaintiff asserts that South Oaks "worked in conjunction with NUMC by accepting Plaintiff's transfer from NUMC and relying on NUMC's inaccurate conclusion that

Plaintiff was in need of involuntary confinement."  Such course of conduct is, according to

Plaintiff, tantamount to state action.  *See* Plaintiff's Memorandum of Law in Opposition to

Defendant South Oaks' Motion to Dismiss ("Pl.'s Opp'n") at 7-9.

With regard to her claim of negligence/malpractice, Plaintiff asserts that since the

threshold for alleging negligence and medical malpractice claims is low, simply "[a]lleging that

South Oaks deviated from the appropriate standard of care in exercising medical judgment under

MHL § 9.37 is sufficient to state a cause of action for negligence and medical malpractice."  *Id*.

at 11.  Specifically, Plaintiff argues that because "South Oaks failed to conduct a meaningful

evaluation when admitting Plaintiff" and instead "blindly rel[ied] upon NUMC's incorrect

conclusion without making any inquiries," South Oaks is liable for malpractice and is not

entitled to protection afforded by any privilege.  *Id*. at 12, 14-15.

Plaintiff next argues that her claim for negligent infliction of emotional distress is viable

since South Oaks owed a duty to Plaintiff, breached that duty by relying on NUMC's assessment

and failed to conduct its own inquiry into Plaintiff's claims.  *Id*. at 18.  As such, Plaintiff

concludes that the breach "resulted in Plaintiff being committed to a psychiatric institution for no

reason," enduring "emotional distress that most of us cannot even imagine."  *Id*. at 19.

Further, Plaintiff urges this Court to exercise supplemental jurisdiction over the state law

claims arguing that:  (1) "Plaintiff's federal and state law claims against South Oaks 'derive from

a common nucleus of operative fact'" (internal citation omitted); (2) policy reasons — including

judicial economy and the avoidance of needless multiple lawsuits in different forums —

"militate in favor of . . . exercising [] jurisdiction over all of Plaintiff's claims against South

Oaks[;]" and (3) even if the Court dismissed the federal claims against South Oaks, the federal

claims against the other defendants would survive providing the Court with the requisite original subject-matter jurisdiction. *Id*. at 15-16.

### 3. *Defendant's Reply*

In its Reply Memorandum, South Oaks reasserts its position that it was not acting under color of state law since mere compliance with the MHL does not constitute state action. Defendant points to *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014) for the proposition that "doctors, in a private hospital, who involuntarily commit a patient under [MHL § 9.39], are not acting under color of State law under any of the three applicable tests[.]" *See* Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss ("Def.'s Reply") at 2-3.

To the extent Plaintiff's theory for the existence of state action rests on the argument that the State compelled South Oaks' conduct "by virtue of Plaintiff being admitted to South Oaks pursuant to [MHL] § 9.37[,]" such reliance is misplaced. Section 9.37 of the MHL, by its terms, "neither compels nor encourages involuntary commitment," but rather is permissive in nature. *Id*. at 4-5 (citing *Okunieff v. Rosenberg*, 996 F. Supp. 343 (S.D.N.Y. 1998)).

As to the claim of negligent infliction of emotional distress, Defendant reiterates that such claims are generally precluded where a "traditional tort remedy exists" and the act of involuntary commitment, in and of itself, "does not rise to the level of an intentional infliction of emotional distress claim." *Id*. at 8 (citing *Antoine v. New York City Health & Hospitals Corp.*, 6 Misc. 3d 1013(A), 800 N.Y.S.2d 341 (Sup. Ct. 2005)).

Defendant further asserts that in regard to the negligence/malpractice claim, "the complaint at no point pleads that South Oaks departed from accepted medical practice and that the departure was the proximate cause of an alleged injury." *Id*. at 9.  Plaintiff's Complaint,

according to the Defendant, "falls short of alleging that South Oaks failed to follow the procedure as outlined in [MHL] § 9.37" because the pleading does not outline (1) what steps South Oaks should have followed (2) that the failure to follow certain steps constituted a departure and (3) that such failure was the proximate cause of Plaintiff's injuries. *Id.* at 10-11.

## III.   STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *Buch v. Farmingdale State College*, No. 12-CV-1762, 2013 WL 789354, at *10 (E.D.N.Y. March 4, 2013); *see also Meadows v. City of New York*, No. 10-CV-286, 2011 WL 864832, at *3 (E.D.N.Y. March 11, 2011) (noting that "[A] Rule 12(b)(6) motion to dismiss tests the legal, not the factual sufficiency of a complaint.")

The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the court set forth a two-pronged approach to be utilized in analyzing a

9

motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

## IV.   DISCUSSION

### A.   Section 1983 Claim

Pursuant to 42 U.S.C. § 1983,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

42 U.S.C. § 1983.  By it terms, Section 1983 does not itself create any substantive rights, but rather "'provides a procedure for redress for the deprivation of rights established elsewhere.'" *Ruhlmann v. Ulster Cnty. Dept. of Social Servs.*, 234 F. Supp. 2d 140, 159 (N.D.N.Y. 2002) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)).  As such, Section 1983 provides the central framework "by which a federal court adjudges alleged state and local infringements of federally created rights."  *Ruhlmann*, 234 F. Supp. 2d at 159.

In order to state a claim under Section 1983, a plaintiff "'[ (1) ] must allege the violation of a right secured by the Constitution and laws of the United States, and [ (2) ] must show that the alleged deprivation was committed by a person acting under color of state law.'"  *Gleason v. Scoppetta*, 566 Fed. App'x 65, 68 (2d Cir. 2014) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) (alternations in original).

### 1. *Deprivation of Rights*

The gravamen of Plaintiff's Section 1983 claim, as it pertains to South Oaks, is that Plaintiff was "transferred [from NUMC] against her will to South Oaks and was involuntarily admitted into the institution."  Amend. Compl. ¶ 37.  The Supreme Court has stated unequivocally that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Addington v. Texas*, 441 U.S. 418, 425 (1979); s*ee Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 188 (2d Cir. 2005) ("An involuntary civil commitment is a "massive curtailment of liberty," and it therefore cannot permissibly be accomplished without due process of law.") (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995)).  In asserting that she was involuntarily committed by

South Oaks, Plaintiff has adequately set forth this element of a claim for deprivation of a right secured by the Constitution.[2]

### 2. Under Color of State Law

The second element of a Section 1983 claim requires the pleading to assert that that a defendant was acting under color of state law.[3]  Here, South Oaks is a private, not for profit corporation.  In order for the actions of a private hospital such as South Oaks to be attributable to the state, one or more of the following tests must be met:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008); *see Rhee v. Good Samaritan Hospital*, No. 12-CV-8508, 2015 WL 1501460, at *6 (S.D.N.Y. March 30, 2015) .

The Second Circuit has held that in certain contexts, a private non-profit hospital and private physicians, though licensed and regulated by the state, are not acting under color of state law.  *See, e.g.*, *Schlein v. Milford Hospital, Inc.* 561 F.2d 427, 428 (2d Cir. 1977) (recognizing that state regulation of facilities and standards without more does not constitute state action); *Doe v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (affirming district court's finding of no state

---

[2]    Defendant's opposition papers do not explicitly or implicitly address Plaintiff's claim that her transfer and subsequent involuntary commitment by South Oaks deprived her of a right guaranteed by the Constitution giving rise to a Section 1983 action.  The Court therefore assumes Defendant concedes that Plaintiff has successfully pleaded this element.

[3]    The Supreme Court has held that the "under color of state law" requirement is legally indistinguishable from the "state action requirement" under the Constitution.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 & n. 8 (1999).

action where plaintiff was involuntarily committed to private hospital pursuant to § 9.31 of the

New York Mental Health Law) (*per curiam*); *Sybalski*, 546 F.3d at 260 (restrictions imposed by

private group home on parents' communication with mentally ill adult child pursuant to state

established standards and procedures were insufficient to establish state action); *Hogan v. A.O.

Fox Mem. Hosp.*, 346 Fed. App'x. 627, 629  (2d Cir. 2009) (plaintiff's involuntary commitment

to a private hospital did "not fall within any of the tests for determining when private conduct

can be attributed to the state.") (summary order); *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d

Cir. 2014) (finding that forcibly medicating and hospitalizing plaintiff by private health care

providers did not constitute action attributable to state).

 "While it is clear in the Second Circuit that *private* physicians that participate in civil

commitment of a patient to a *private* hospital are not engaged in state action under any of the

appropriate tests, the Second Circuit has *never* considered a civil commitment involving both

public and private actors and facilities." *Rhee*, 2015 WL 1501460, at *6 (emphasis in original)

(internal citations omitted).  Moreover, "[t]he determination of whether a private party qualifies

as a state actor is fact-specific and requires consideration of various factors," leading to the

conclusion that "a private hospital that admits an involuntarily committed person upon her

transfer from a state facility is *not* immune from § 1983 liability as a matter of law." *Meadows*,

2011 WL 864832, at *4 (emphasis added).  Rather, this inquiry "requires [a] thorough

development and analysis of the facts of the case." *Id*., at *5; *see also J.R. v. New York City

Dept. of Educ.*, No. 14 Civ. 0392, 2015 WL 5007918, at *7 (E.D.N.Y. Aug. 20, 2015)

(recognizing that whether a private entity is engaging in state action requires a "fact-specific

determination"); *Ruhlmann*, 234 F. Supp. 2d 140, 167 (whether a private facility engaged in

action attributable to the state presented factual issues precluding summary judgment).  Since

Second Circuit precedent in this area does not foreclose the Court's analysis of this case, *see Rhee*, 2015 WL 1501460, at *7, the Court turns its attention to the three tests laid out in *Sybalski* in order to determine if Plaintiff has met her burden to plead facts sufficient to establish state action.

### a.   The Compulsion Test

Under the "compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see Sybalski*, 546 F.3d at 257; *McGugan v. Aldana-Bernier*, No. 11-CV-00342, 2012 WL 1514777, at *4 (E.D.N.Y. Apr. 30, 2012).

In this case, Plaintiff alleges she was involuntarily committed pursuant to MHL § 9.37, which provides, in pertinent part, that:

> The director of a hospital, upon application by a director of community services or an examining physician duly designated by him or her, *may* receive and care for in such hospital as a patient any person who, in the opinion of the director of community services or the director's designee, has a mental illness for which immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others.

N.Y. Mental Hyg. Law § 9.37 (emphasis added).  A review of the plain text of the statute reveals that it in fact sets forth a permissive as opposed to a mandatory mechanism to effect the commitment of an individual under certain circumstances.  The permissive nature of the regulation is underscored by the use of the word "may."  *McGugan*, 2012 WL 1514777, at *4 (interpreting MHL § 9.27) ; *see Doe v. Rosenberg*, 996 F. Supp. 343, 350 (S.D.N.Y. 1998) (same), *aff'd*, 166 F.3d 507 (2d Cir. 1999).  As Judge Spatt recently noted in *Bryant v. Steele*, 93 F. Supp. 3d 82, 89-90 (E.D.N.Y. 2015), "the use of the word 'may' in the confinement

14

provisions of Section 9.37 require[s] an act of professional judgment."  In *Bryant*, the Court

relied upon Judge Sweet's reasoning in *Doe*, as follows,

> The use of the word "may" is convincing of the lack of
> encouragement or exercise of coercive power by the state, factors
> that must exist under the state compulsion test.  Even though the
> MHL provides the legal framework under which physicians may
> involuntarily commit a patient by creating procedures and
> standards for commitment, as Doe points out, it leaves the decision
> to commit completely to the physician's discretion.

*Doe*, 996 F. Supp. at 349-50 (internal citations omitted).  In light of the permissive nature of

MHL § 9.37,  mere compliance with its procedural requirements does not turn private action into

state action.  As noted, the decision to commit a person is left completely to the physician's

discretion.  Consequently, the state did not exercise "coercive power" over South Oaks here and

the actions of South Oaks cannot be attributed to the state under a theory of state compulsion.

*McGugan*, 2012 WL 1514777, at *4.  As such, Plaintiff cannot make out the first element

necessary to establish that the hospital was acting under color of state law.  *See Doe*, 996 F.

Supp. at 352 ("Compliance with the procedures of the MHL, a statute that neither forces nor

encourages involuntary commitments, does not convert private action into state action.");

*McGugan*, 2012 WL 1514777, at *4; *Sybalski*, 546 F.3d at 258.

### b.  The Public Function Test

Under the "public function test," state action results where a private actor performs a

function that is "traditionally the exclusive prerogative of the State."  *Blum*, 457 U.S. at 1011;

*Sybalski*, 546 F.3d at 259; *McGugan*, 2012 WL 1514777, at *5.  Plaintiff, relying on authority

that has not been universally followed, asserts that "involuntary confinement by a private

hospital is an action under the color of law" and that "South Oaks' act of deciding to

involuntarily confine her . . . is a decision that has been traditionally and exclusively reserved to

15

the State."[4]  Pl.'s Opp'n at 7, 10.  Despite Plaintiff's position, courts generally have held that "[c]ivil commitment under the MHL, the act defendants are alleged to have made, is not 'traditionally the exclusive prerogative of the State.'"  *McGugan*, 2012 WL 1514777, at *5 (quoting *Doe*, 996 F. Supp. at 353); *Antwi v. Montefiore Med. Ctr.*, No. 14 Civ. 840, 2014 WL 6481996, at *6 (S.D.N.Y. Nov. 18, 2014) ("Civil commitment pursuant to the MHL does not constitute the exercise of a power traditionally the exclusive prerogative of the State.  Rather, involuntary confinement has been a traditionally private remedy in New York.") (internal quotations and citations omitted); *Andersen v. North Shore Long Island Jewish Healthcare Sys. Zucker Hillside Hosp.*, No. 12-CV-1049, 2015 WL 1443254, at *3 (E.D.N.Y. Mar. 26, 2015) ("involuntary confinement has traditionally been a private remedy and thus is not a public function. . . ."); *see also Sybalski*, 546 F.3d at 259 (recognizing that "care for the mentally disabled was neither traditionally nor exclusively reserved to the state[,] . . . [defendants'] adoption of this function does not make [their] decisions in this regard properly attributable to the state.") (alternations in original).  After a substantive review of the record of involuntary commitment in New York State, Judge Sweet concluded in *Doe* that such activity had been traditionally a private remedy.  *Doe*, 996 F. Supp. at 355-56.  The Second Circuit agreed with his rationale.  *Doe*, 166 F.3d at 508.  Private actors "must be delegated functions that were traditionally under the exclusive authority of the state for the public function test to be satisfied." *Sybalski*, 546 F.2d at 259.

---

[4]     Plaintiff primarily relies on the cases of *Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396, 406 (N.D.N.Y. 1992) and *Ruffler v. Phelps Mem. Hosp.*, 453 F. Supp. 1062, 1067 (S.D.N.Y. 1978).  However, both of these decisions were criticized by the court in *Doe* and have generally not been followed by other courts within this Circuit when analyzing whether the commitment of an individual by a private entity meets the public function test.  *See Doe*, 996 F. Supp. at 354. Plaintiff also relies on two other district court decisions from the District of New Jersey and the District of Colorado as well as a decision from the State of New York — none of which this Court finds persuasive in light of prevailing precedent.

To the extent Plaintiff relies on authority to the contrary, the Court finds such reliance misplaced. Because involuntary confinement has traditionally been a private remedy, South Oaks' actions here do not constitute state action under the public function test. *See McGugan*, 2012 WL 1514777, at *5.

### c.   The Close Nexus / Joint Action Test

Under the "close nexus / joint action test" a private actor may be found to have engaged in action attributable to the state where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004. Relying on the case of *Tewksbury v. Dowling*, 169 F. Supp. 2d 103 (E.D.N.Y. 2001), Plaintiff asserts that in the instant case, "South Oaks worked in conjunction with NUMC by accepting Plaintiff's transfer from NUMC and relying on NUMC's inaccurate conclusions that Plaintiff was in need of involuntary confinement, making South Oaks a state actor." Pl.'s Opp'n at 9.

The fact pattern in *Tewksbury* is similar to the instant case. There, the plaintiff filed suit pursuant to 42 U.S.C. § 1983 based upon her involuntary commitment under MHL § 9.37. *Id*. at 105. Plaintiff was initially evaluated by a psychiatrist at the University Medical Center at SUNY Stony Brook ("Stony Brook"), a state-operated facility. *Id*. at 106. The attending psychiatrist signed commitment certification papers, opining that Tewksbury suffered from mental illness and was a danger to others as well as herself. *Id*. at 106. A Stony Brook employee then communicated with a private physician affiliated with  St. John's Episcopal Hospital ("St. John's"). *Id*. at 106-07. The private physician agreed to accept Tewksbury as a patient and she was transported to St. John's, a private facility. *Id*. Without first conducting their own independent examination, physicians at St. John's involuntarily approved her continued

confinement and issued an order authorizing hospital staff to administer a psychotropic drug if needed.  *Id*.  A second private physician affiliated with St. John's provided the 72-hour certification pursuant to MHL § 9.37 which Tewksbury asserted was done without any independent psychiatric evaluation and that she was not a danger to herself or others.  *Id*. at 107. Tewksbury argued that her case was distinguishable from *Doe* because the private physicians at St. John's jointly participated with state officials in her involuntary hospitalization.  *Id*. at 109.

The Court in *Tewksbury* pointed out that if the decision to commit the plaintiff had been based solely on the independent medical judgment of the St. John's doctors, the defendants' arguments that they were not state actors would be correct.  *Id*.  However, the court held that Tewksbury was admitted to St. John's *without* any independent examination.  *Id*.  In fact, the court specifically noted the admission by one of the St. John's doctors in his affidavit that he accepted Tewksbury as a patient over the phone.  *Id*.  Based on these facts, the court determined that Tewksbury was admitted to St. John's based only on the examination of the Stony Brook physicians, without the exercise of independent medical judgment by the St. John's physicians. Underscoring the close nexus, the court emphasized that St. John's

> could not have committed Tewksbury without the assistance of [Stony Brook physicians], who [are] unquestionably [] state actor[s]. Tewksbury was committed pursuant to § 9.37 of the Mental Hygiene Law ("MHL"). Under this section of the MHL, the Director of Community Services must first certify that the patient requires immediate hospitalization. Only upon the application of the Director of Community Services, could Defendants, as private physicians working for a private hospital, hospitalize Tewksbury pursuant to this section of the MHL.

*Id*. at 110.  Consequently, the court held that the defendants acted under color of state law when they involuntarily hospitalized Tewksbury.  *Id*.

Here, Plaintiff Kenny alleges that after she was taken into custody by the Hempstead
Police Department, she was transported to NUMC, a state actor organized under the laws of the
State of New York, for a psychiatric evaluation.  *See* Amend. Compl. ¶¶ 10, 26.  After spending
one night at NUMC, Plaintiff asserts she was transferred to South Oaks and admitted pursuant to
MHL § 9.37.  *Id.* ¶ 81.  At the time of her transfer, Plaintiff maintains, South Oaks did not
independently examine her, but instead, "relied on NUMC's initial determination" which
resulted in the requisite state action.  Pl.'s Opp'n at 2, 9.

Though at first blush it would appear that the Second Circuit's decisions in *Doe* and
*McGugan* cannot be reconciled with *Tewksbury*, a closer analysis reveals a distinct factual
difference, namely, that *Tewksbury* involved action by both public and private actors while *Doe*
and *McGugan* did not.  *See Doe*, 166 F.3d at 507 (affirming the district court's determination
that private physicians did not engage in state action solely by committing individuals pursuant
to the MHL); *McGugan*, 752 F.3d at 229 (finding that forcibly medicating and hospitalizing
plaintiff by private actors pursuant to the MHL could not constitute action attributable to the
state).

In addition, *Tewksbury* is not a mere aberration.  Its reasoning has been adopted in two
recent district court decisions involving similar facts.  In *Bryant v. Steele*, 93 F. Supp. 3d at 83,
plaintiff contacted the Suffolk County Police Department after receiving threatening telephone
calls.  When no action was taken with respect to plaintiff's complaint, plaintiff contacted the
Internal Affairs Division to lodge a complaint about the lack of any progress in connection with
the allegedly threatening calls.  *Id.* at 84.  The Suffolk County Police perceived plaintiff's
behavior to be "manifestations of mental illness," at which point the Suffolk County Office of
Mental Health ("OMH") became involved.  *Id.*  After OMH's evaluation, plaintiff was removed

from his home pursuant to MHL § 9.45 and was transported to Stony Brook Medical Center

("Stony Brook") for a psychiatric evaluation, at which point he was admitted pursuant to MHL

§ 9.37.  *Id.*  The day after his admission to Stony Brook, plaintiff was transferred to Brunswick

Hospital Center ("Brunswick"), a private facility.  *Id.* at 85.  Brunswick physicians admitted

plaintiff pursuant to MHL § 9.37 but did not perform an independent psychiatric evaluation,

relying instead on Stony Brook's examination.  *Id.*  Based upon these facts and relying on the

reasoning in *Tewksbury*, Judge Spatt determined that "at [the motion to dismiss] stage of the

litigation in which the Court must draw all favorable inferences in favor of the Plaintiff, the

Court finds that the Plaintiff has adequately pleaded Section 1983 claims against [defendants]

based on a 'sufficiently close nexus' with undisputed state actors."  *Id.* at 93.

Similarly, in *Rhee v. Good Samaritan Hospital*, 2015 WL 1501460, at *1, plaintiff Rhee

was admitted to Good Samaritan Hospital ("Good Samaritan"), a private facility, after allegedly

manifesting threatening behavior towards his mother.  After being examined by Good Samaritan

physicians and those physicians having signed the requisite certificates, plaintiff was

involuntarily committed  pursuant to MHL § 9.27.[5]  *Id.*  Thereafter, plaintiff was transferred to

Summit Park Hospital ("Summit Park"), a state facility.  *Id.* at *2.  While at Summit Park,

plaintiff was re-examined and forced to take medication.  *Id.*  Based upon these facts and finding

---

[5]      Section 9.27 states in part that "[t]he director of a hospital may receive and retain therein
as a patient any person alleged to be mentally ill and in need of involuntary care and treatment
upon the certificates of two examining physicians, accompanied by an application for the
admission of such person. The examination may be conducted jointly but each examining
physician shall execute a separate certificate."  N.Y. Mental Hyg. Law § 9.27(a).  In total, § 9.27
"requires action by four separate individuals-one of a number of designated individuals to make
an application for admission . . . two examining physicians to sign certificates . . . and a third
physician at the receiving facility to confirm the findings of the certifying physicians."  *Rhee*,
2015 WL 1501460, at *7.  *See* N.Y. Mental Hyg. Law § 9.27(a)-(b), (e).

the reasoning in *Tewksbury* instructive, the court in *Rhee* stated that "[t]he fact that Plaintiff was committed to a *state* institution under MHL § 9.27 manifests a level of public and private entwinement that is both qualitatively and quantitatively greater than was present in either *Rosenberg* or *McGugan*." *Rhee*, 2015 WL 1501460, at *7. The court clarified its finding of state action in the context of plaintiff's motion to dismiss, reasoning that "the doctors' actions-together with the actions of state employees-effected Plaintiff's commitment to a state facility, which could not have been accomplished absent the state agents' participation." *Id.* As such, "[g]iven the procedural posture of this motion and in light of the Court's obligation to liberally construe the Complaint, the Court cannot dismiss on the basis of state action." *Id. See also Kudla v. Queens Hospital Ctr.*, 94 CV 4426 (E.D.N.Y. Mar. 31, 1998) (finding state action where plaintiff's involuntary commitment at a state facility and subsequent transfer to a private facility pursuant to MHL § 9.27 involved joint action by public and private actors); *but see Antwi*, 2014 WL 6481996, at *4 (E.D.N.Y. Nov. 18, 2014) (finding no "'sufficiently close nexus' between Defendant and the state, because Defendant chose to commit Plaintiff based on the evaluations and diagnoses of its own employees, *without* consultation or direction from state officials.") (emphasis added).

Though Defendant relies on both *Forziano v. Independent Group Home Living Program, Inc.* No. CV 13-0370, 2014 WL 1277912 (E.D.N.Y. Mar. 26, 2014) and *Sybalski v. Independent Group Home Living Program, Inc.*, 2007 WL 1202864, such reliance is misplaced. Each of these cases is factually distinguishable from the instant action as well as from *Tewksbury, Bryant* and *Rhee*. *Forziano* involved two married individuals with developmental disabilities suing defendant for denying them the ability to cohabitate. *Forziano*, 2014 WL 1277912, at *1. *Sybalski* concerned restrictions placed on parents' communication and visitation with their

developmentally disabled adult child.  *Sybalski*, 2007 WL 1202864, at *1.  Due to the factual

differences in both of these decisions and because the "determination of whether a private party

qualifies as a state actor is fact-specific," the Court finds these decisions inapposite.  *Meadows*,

2011 WL 864832, at *4.

In light of the above analysis, and because all reasonable inferences at this stage of the

proceedings must be drawn in favor of the Plaintiff, the Court respectfully recommends to Judge

Feuerstein that South Oaks' motion to dismiss Plaintiff's Section 1983 claim be DENIED at this

time since Plaintiff has adequately pleaded claims against South Oaks based on a "sufficiently

close nexus with undisputed state actors."  *Bryant*, 93 F. Supp. 3d at 93.

### B.   State Law Claims

#### 1.   *Negligence / Malpractice*

Medical malpractice is a state law cause of action.  *See Lorenz v. Managing Director, St.

Luke's Hosp.*, No. 09 Civ. 8898, 2010 WL 4922267, at *10 (S.D.N.Y. Nov. 5, 2010)  "A claim

sounds in medical malpractice when the gravamen of the complaint is 'negligence in furnishing

the medical treatment of a patient.'"  *Payette v. Rockefeller Univ.*, 220 A.D.2d 69, 71, 643

N.Y.S.2d 79, 81 (App. Div. 1996) (internal citation omitted).  Under New York law, in order to

state a claim based on a theory of medical malpractice, a plaintiff must allege "a deviation or

departure from accepted practice and evidence that such departure was a proximate cause of

injury or damage."  *Estiverne v. Esernio-Jenssen*, 581 F. Supp. 2d 335, 350 (E.D.N.Y. 2008); *see*

*Koulkina v. City of New York*, 559 F. Supp. 2d 300, 325 (S.D.N.Y. 2008).  Further, each element

ultimately must be established by "expert medical opinion unless the deviation from a proper

standard of care is so obvious as to be within the understanding of an ordinary layperson."

*K.R. ex rel. Perez v. U.S.*, 843 F. Supp. 2d 343, 355 (E.D.N.Y. 2012).

Notwithstanding the liberal notice pleading requirements and the fact that all reasonable inferences are to be made in Plaintiff's favor at the motion to dismiss stage, Plaintiff's allegation of negligence/malpractice against South Oaks fails.  In attempting to plead her medical malpractice claim,  Plaintiff does little more than proffer conclusions in the place of facts.  The only references in the Amended Complaint to any deviation of care with respect to Plaintiff's malpractice claim are:  (1) "NUMC and South Oaks, and their respective physicians breached this duty of care by improperly and illegally confining Plaintiff without any reason or cause[;]" and (2) "NUMC and South Oaks, and their respective physicians, breached their duty of care by ignoring the conclusions of [the Arson Bomb Squad investigators] and failing to investigate Plaintiff's claims that [the Arson Bomb Squad] found no evidence that she was trying to burn the apartment complex down."  Amend. Compl. ¶¶ 98, 99.  Even construing the Amended Complaint liberally, these assertions fail to establish how South Oaks' conduct deviated from the requisite standard of care and, assuming such deviation, how these acts or omissions proximately caused Plaintiff's injuries.  "Such bare allegations cannot survive a motion to dismiss." *Koulkina*, 559 F. Supp. 2d at 328; *see Flemming v. Velardi*, No. 02 Civ. 4113, 2003 WL 21756108, at *4 (S.D.N.Y. July 30, 2003) (dismissing medical malpractice claim asserted under New York law where *pro se* plaintiff did not allege how neurologist "deviated from accepted medical practice" or how plaintiff "suffered any harm" from the neurologist's alleged conduct); *see also McLearn v. Cowen & Co.*, 660 F.2d 845, 850 (2d Cir. 1981) (recognizing that it is within the district court's discretion to dismiss state law claims on the merits).  Accordingly, the Court recommends to Judge Feuerstein that South Oaks' motion to dismiss Plaintiff's negligence/malpractice claim be GRANTED.[6]

---

[6]      In her Memorandum in Opposition, Plaintiff states in a footnote that "[t]o the extent [the

### 2.   *Negligent Infliction of Emotional Distress*

Two generally accepted theories exist under New York law in order to establish a claim of negligent infliction of emotional distress — the "bystander theory" and the "direct duty" theory.  *See In re Air Crash at Belle Harbor, N.Y.*, 508 F. Supp. 2d 244, 248 (S.D.N.Y. 2007).  Under the "bystander theory," "a plaintiff must demonstrate both that '(1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious injury of a member of her immediate family.'"  *Id.* (quoting *Mortise v. United States*, 102 F.2d 693, 696 (2d Cir. 1996)).  Similarly, in order to state a claim under the "direct liability theory," plaintiff must show that "she suffers from emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety."  *Id.* (internal quotations and citations omitted).  The duty owed to plaintiff "must be specific to the plaintiff, and not some amorphous, free-floating duty to society."  *Id.*  In addition, recovery for purely emotional harm is extremely limited.  *See Romero v. City of New York*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012) ("it is well settled that the circumstances under which recovery may be had for purely emotional harm are extremely limited. . . ." (internal quotations and citation omitted).

Under either theory of recovery, a plaintiff must plead facts sufficient to illustrate that the defendant's conduct was extreme and outrageous and that a causal connection existed between the conduct and the injury.  *See id.*; *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) (recognizing that a claim of negligent infliction of emotional distress must "be based on conduct that is extreme and outrageous"); *Naughright v. Weiss*, 826

---

malpractice claim] is not sufficiently pleaded, we ask for an opportunity to amend."  Pl.'s Opp'n at 11 n. 2.

F. Supp. 2d 676, 697-98 (S.D.N.Y. 2011) ("A cause of action for either intentional or negligent infliction of emotional distress must allege that the defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal quotations and citation omitted).

Plaintiff's negligent infliction of emotional distress claim is not sustainable. First, Plaintiff fails to plead facts sufficient to clearly illustrate what duty South Oaks owed to her (if any) and how the breach of that duty directly resulted in her extreme emotional distress.[7] *See In re Air Crash at Belle Harbor, N.Y.*, 508 F. Supp. 2d at 248; Amend. Compl. ¶¶ 73, 74. Second, Plaintiff's Amended Complaint is devoid of any facts demonstrating how South Oaks' conduct "was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Naughright*, 826 F. Supp. 2d at 697-98; *see* Amend. Compl. ¶¶ 75-76. Even resolving all factual inferences in Plaintiff's favor, as this Court is obliged to do when deciding a pending motion to dismiss, the bare allegations in Plaintiff's Amended Complaint which underlie her claim of negligent infliction of emotional distress fail to set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund*, 595 F.3d at 91 (quoting *Twombly*, 550 U.S. at 555). For these reasons, the Court respectfully recommends to Judge Feuerstein that South Oaks' motion to dismiss Plaintiff's claim for negligent infliction of emotional distress be GRANTED.[8]

---

[7]     Although Plaintiff does not clearly specify in her Amended Complaint the theory of recovery under which she seeks relief, the Complaint does not allege any set of facts that could support a "bystander theory." Therefore, the Court assumes Plaintiff is proceeding under a "direct liability theory." *See* Amend. Compl. ¶¶ 72-76.

## V.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that

Defendant South Oaks' motion to dismiss Plaintiff's Amended Complaint be GRANTED, in

part, and DENIED, in part, to the extent set forth in this Report and Recommendation.

## VI.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record

shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to**

**be sent to the Chambers of the Honorable Sandra J. Feuerstein, and to the Chambers of**

**the undersigned. Any requests for an extension of time for filing objections must be**

**directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for**

**filing objections**.  Failure to file objections will result in a waiver of those objections for

purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900,

901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60

(2d Cir. 1996).

---

[8]    The Court notes that even had Plaintiff sufficiently pleaded a cause of action for negligent infliction of emotional distress, the "New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available."  *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002); *see DeVito v. Barrant*, No. 03-CV-1927, 2005 WL 2033722, at *9 (E.D.N.Y. Aug. 23, 2005) (dismissing claims for negligent or intentional infliction of emotional distress because "the conduct underlying the claim[s] falls within the ambit of traditional tort liability") (internal quotations and citation omitted) (alteration in original).  In this instance, in addition to her negligent infliction of emotional distress claim, Plaintiff also pleaded a claim based upon negligence / malpractice encompassing and relying upon the same set of facts.  As such, a traditional tort remedy arguably is available and thus, Plaintiff's claim based upon this theory of liability would require dismissal.

**SO ORDERED**.

Dated: Central Islip, New York
February 3, 2016


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge