ROBERT CANCRO, M.D.
118 McLAIN STREET
BEDFORD CORNERS, NY 10549

February 5, 2016

Russell T. McHugh, Esq

Lawrence Worden Rainis & Bard, PC

Melville, New York 11747

Re: Kenny v. Nassau University Medical Center

Dear Mr. McHugh:

Pursuant to your request, I reviewed the following materials, concerning the hospitalization of Mrs. Kenny in February 2013, the records from Nassau University Medical Center; the records from the Long Island Home; the records from Dr. Abidi; the records from Dr. Goldman; the records from Central Nassau Guidance and Counseling Services;; the records from Brunswick Hospital Center; the deposition of Dr. Sharoha; the deposition of Dr. Babalola; the deposition of Dr. Kumar; the several depositions of Mary Kenny occurring on September 28, 2015, October 7, 2015, October 8, 2015, and October 14, 2015; and the forensic report of Dr. Nizny.

Let me briefly summarize the issues. Mrs. Kenny was burning papers in her bathroom which she wanted to destroy. The papers or letters were sufficiently voluminous to produce enough smoke to be detected and reported by a neighbor.. The police investigated and found she was burning this material in her bathtub. She was unable to offer an explanation as to why she did not destroy the letters in a more safe fashion. She did not recognize the danger the fire posed. She gave a history of prior psychiatric illness and was currently on psychiatric medications. It was felt by the responders that a psychiatric evaluation was warranted. She was transferred to the psychiatric emergency room at Nassau University Medical Center for the evaluation. She was examined by the resident physician and an attending physician. Shei demonstrated inappropriate laughter, was circumstantial, showed flight of ideas, was tangential, and expressed paranoid ideas about the police and the superintendent of the building. She had a history of prior psychiatric hospitalization and was on psychiatric medication at the time of the encounter. On the basis of these findings she was held to await a psychiatric bed which was not available at Nassau and subsequently she was transferred to the Long Island Home.

When the physicians in the psychiatric emergency room determine that a patient requires involuntary hospitalization they can hold the patient for up to 72 hours at which point if the patient demands

release in writing the patient must be brought before the Court for adjudication. Mrs. Kenny was transferred in approximately 24 hours after arrival at Nassau which was well within the 72 hour limit. I could not even find any evidence that she submitted a written request for immediate discharge which would have started the clock running.

I can conclude with a reasonable degree of medical and psychiatric certainty that the transfer from the emergency room at Nassau was warranted, that the evaluation was conducted in an appropriate fashion, that the decision to transfer her for further observation and evaluation was warranted and did not deviate from the standard of care.

Sincerely yours,

Robert Cancro, MD